MICKLES *v.* DILLAYE and others.

Where the acknowledged relation of mortgagor and mortgagee in possession exists, the latter is not permitted to obstruct the right of redemption, and therefore will not, upon redemption, be allowed for general improvements made without the acquiescence or consent of the mortgagor.

But where valuable and permanent improvements have been made in good faith, by a person standing upon the legal footing of a mortgagee in possession, but who supposed himself to have acquired the absolute title, and such mistake was favored by the omission of the mortgagor, for several years before and after the improvements, to assert any interest in the premises, the mortgagor on asking the aid of equity to redeem will be compelled to allow the value of the improvements, though exceeding the rents and profits received.

APPEAL from the Supreme Court. The action was for the redemption of certain premises in the city of Syracuse, mortgaged to Philo D. Mickles. The trial was before a referee, who found that the mortgaged premises were, in 1840, conveyed to Philo D. Mickles by one Fitch. There was then outstanding a mortgage upon the premises, executed by Fitch to David Hall. Philo D. Mickles conveyed to the plaintiff, with warranty, March 8th, 1841, for the price of $4000, to secure $2000 of which, the plaintiff executed the mortgage which in this suit he sought to redeem. This mortgage and the bond collateral thereto were, in April, 1841, assigned by Philo D. Mickles to John Townsend. Philo D. Mickles purchased the Fitch mortgage on September 23d, 1843, and on the 6th of November, 1843, assigned it to John Townsend, without the knowledge or consent of the plaintiff, so far as the evidence showed. Townsend, on the 23d of September, 1846, sold the premises to Charles A. Wheaton, for $1750, upon a foreclosure of the Fitch mortgage, of which no notice was served on the plaintiff. At the time of this sale, Wheaton was the owner, by assignment from Townsend, of the mortgage for $2000, executed by the plaintiff to Philo D.

Mickles. Wheaton took possession of the premises, and conveyed the same, with warranty, December 19, 1846, to John A. Robinson, who conveyed, November 19th, 1852, to Henry A. Dillaye, also with warranty. The only question in dispute in this suit was as to the allowance to be made to Dillaye for improvements after he took possession under the deed from Robinson; the effect of the purchase by Philo D. Mickles of the Fitch mortgage being the subject of litigation in another suit.

P. D. Mickles was in possession of the premises at the time he conveyed them to the plaintiff, and when he received the mortgage now sought to be redeemed. From that time until the sale under the attempted foreclosure he continued to rent them in his own name and to receive the rents, without disclosing the interest of the plaintiff. They were assessed to him. Wheaton, the purchaser, went into possession immediately after the sale, the tenants of P. D. Mickles attorning and paying the rent to him. P. D. Mickles who was examined as a witness, testified that when he heard of the sale, which he supposed was by virtue of the mortgage executed by the plaintiff, he told Wheaton he was very glad of it. He understood that the premises sold for enough to pay the mortgage, and he considered the matter settled, and that Wheaton had obtained a perfect title. The purchasers of the premises under Wheaton took possession at the time of their respective purchases. There was a brick building on the lot, which was erected by P. D. Mickles, in 1842 or 1843. It was about nineteen feet wide, thirty-five feet long and two stories high. After Dillaye purchased, and in 1852, it was found that the old building was in a dilapidated condition, and was ready to fall down. The walls were badly cracked, particularly the one in the rear. It could have been repaired at an expense of about $250, by taking down the rear and one of the side walls and rebuilding them. Dillaye caused it to be rebuilt and enlarged, at an expense of about $5000, increas-

ing its length to seventy feet, preserving one of the walls and the floors, and making use of the old materials so far as they would answer. He covered it with a tin roof, and put in gas and water pipes. He then rented it in its improved condition.

The referee found the foregoing facts in substance; and stated that the improvements made by Dillaye were permanent and valuable and were made by him in the full belief that he was the absolute owner of the premises. He added that it appeared from the evidence that while the improvements were making the plaintiff was absent from the county of Onondaga and that there was no evidence that he was aware of the fact while the improvements were progressing. In matter of law he determined that the plaintiff was not obliged to allow any thing on account of the rebuilding beyond what it would cost to repair the old tenement. He proceeded to state the account, charging the plaintiff with the mortgage debt and interest, the repairs estimated upon the principle above stated, premiums of insurance and taxes, and the interest on these last items, and crediting him with the rents received, but without including the increased rent on account of the rebuilding, and making due from the plaintiff, to be paid on the redemption, $1885.99. The defendants excepted. Judgment was rendered allowing a redemption upon the payment of that sum according to the report which was affirmed at a general term in the fifth district. The defendants appealed.

*Le Roy Morgan,* for the appellants.

*B. D. Noxon,* for the respondent.

DENIO, J.—The right of a mortgagor who has made default in the payment of the mortgage debt according to his contract and especially where the mortgagee or his assigns has lawfully acquired the possession, is in equity,

and not a strict legal right.   It would be impossible for the plaintiff to obtain possession of these premises by any suit or proceeding known to the law, except a suit in equity. When the mortgagor comes into a court of equity in such cases to redeem he must do equity to the mortgagee, or the court will consider the estate absolute in the latter; and the redemption, when allowed, will be decreed either absolutely or under certain conditions according to the nature and justice of the case.   ( *Powell on Mortgages,* 387, 388).   In conformity with this idea of the nature of the equity of redemption, the Court of Chancery has always obliged the mortgagor to submit to equitable conditions.   It was formerly held for example that if the mortgagor, after giving the mortgage, had borrowed a further sum of the mortgagee, the latter was not obliged to submit to a redemption until both debts should be paid, (*id.,* 391, 392).   The tendency of modern decisions has been to limit and define the power of the mortgagee to insist upon conditions to the redemption.   It is by no means intended to state there is any unlimited discretion in courts of equity to compel the owner of an estate bound by a forfeited mortgage to do whatever may in a popular sense and without regard to legal precedents be considered equitable in the particular case.   It is, however, useful to bear in mind the origin and true character of the right of redemption, when called upon to determine a case not falling within any settled course of adjudication. It is still the rule that the mortgagor seeking to redeem must do equity to the mortgagee, or those who have succeeded to his rights ; and where it has not been settled what is equity under the circumstances which attend a given case, the court must determine it according to its own sense of what is morally just and right.

Where the conventional relation of mortgagor and mortgagee is shown and acknowledged between the parties, there is no reason why the latter should be allowed to obstruct the right of redemption by expending money upon improve-

ments.   He can at any time call upon the debtor, by suit of foreclosure, to elect whether he will pay the debt or incur an absolute forfeiture; and if he is found making costly improvements there is good reason to suspect a design to avail himself of the present inability of the debtor to discharge the incumbrance in order to confirm his title to the estate by embarrassing the right of redemption. The general rule is therefore understood to be that upon taking the account in a suit for redemption against a mortgagee in possession, he is to be charged with the rents and profits, and be allowed only for necessary reparations. (*Moore* v. *Cable*, 1 *John. Ch. R.*, 387 ; *Quin* v. *Brittain*, 1 *Hoffman's Ch. R.*, 353 ; *Story's Eq.*, § 1016.)

So, if the mortgagor having in fact only a redeemable estate should, even in good faith, deny the mortgagee's equity, this ought not to prejudice the latter provided he had done nothing to mislead the mortgagor, and had not unreasonably slept upon his rights.   In order to apply the cases in which permanent improvements have been allowed to be taken into the account, it is necessary to have a clear view of the situation of these parties at the time the improvements were made.   The defendant Dillaye was in possession as owner under a deed with warranty from a person in possession holding a similar evidence of title from one who had purchased the premises at a sale made professedly upon the foreclosure of a mortgage executed by the true source of title, and who had taken possession under that foreclosure. It is easy to see that an examination, such as a very cautious man would have made, would have shown the invalidity of the foreclosure.   But the omission to make an examination was not such gross negligence as to charge the defendant with bad faith.   He cannot claim that the estate is irredeemable because he supposed it to be so ; but he is not deprived by his omission to examine, of the position of a person acting in good faith without actual notice.   The referee has found, what could not be doubted upon the evidence, that

Mickles *v.* Dillaye and others.

he believed himself to be the absolute owner of the lot. But the plaintiff had very materially aided him in coming to this conclusion, or rather, he had suffered him to fall into that error by an unjustifiable breach of his own obligation. His mortgage was executed in March, 1841. One-fourth of the principal and one year's interest were payable in about one year thereafter, and the whole debt was payable on the 1st day of June, 1845. He was in default for a portion of the debt for eleven years, and the whole amount of principal and interest had been in arrears more than seven years when this suit was commenced. He had not paid the smallest amount, and so far as appears, had never during that period recognized his indebtedness. Conceding, as we must do upon this case, that the sale by P. D. Mickles to the plaintiff, and the giving back of the bond and the mortgage sought to be redeemed was a real and not a colorable transaction, the plaintiff was in possession, up to the sale upon the foreclosure, by P. D. Mickles as his servant or agent or as his tenant. This possession was voluntarily abandoned and given up to Wheaton upon his purchase after foreclosure sale, and the latter immediately entered upon the reception of the rents and profits as owner, and he and those who succeeded him have continued to possess the premises as owners, unchallenged and without actual knowledge of this right of redemption, until shortly before the commencement of this suit, a period of eight years. When Dillaye erected the building, he and those who had preceded him in the title under the supposed foreclosure had been in possession as owners about six years. It is not found by the referee that the plaintiff was ignorant that his agent or tenant had been put out of possession upon pretence of the old mortgage, or that Wheaton and his grantees were in possession, claiming as owners under that proceeding; and considering that the premises lie in one of the most considerable interior towns, and upon the great thoroughfare through the state, it is no wise probable that he was ignorant. The

referee finds indeed that he was not aware of the improve-
ments while they were going on. This is not inconsistent
with a full knowledge that his tenant had yielded up the
possession to a party claiming the absolute title, and that
the occupants were in possession, believing themselves to
be the owners. The fact probably is that both parties acted
in ignorance of their rights. The old mortgage is claimed to
have been extinguished by the operation of a technical rule
of law. Had it remained on foot the right to redeem both
mortgages would not have been of much if any value until
the defendant had improved the premises by the expensive
erection which he put upon them. If the plaintiff was not
aware of the extinguishment of the old mortgage he would
naturally have considered his interest as nominal; and this,
I am persuaded is the explanation of his long inaction. The
case, when Dillaye erected the building, was this: He
really had the title of a mortgagee in possession, but he
supposed he was the absolute owner. The plaintiff had in
fact an equity of redemption, but he had abandoned the
possession to the defendants, who entered as owners; and
he had ceased to claim any interest in the lot. He now finds
that he has a valuable equity of redemption; and the ques-
tion is whether he ought to pay for the improvement as a
condition to the redemption. It was necessary that Dillaye
should make expenditures to a considerable amount to render
the premises tenantable at all; but he laid out more than
was strictly necessary, though not more than would have
judicious had he been, as he supposed he was, the owner.
In *Benedict* v. *Gilman* (4 *Paige*, 58), the plaintiffs had pur-
chased under a statute foreclosure which did not cut off the
rights of judgment creditors whose lien was subsequent to
the mortgage, and had taken possession; and he had made
permanent improvements in ignorance of the existence of
certain judgments in the hands of the defendants. He filed
a bill, claiming a strict foreclosure unless the defendants
would pay up the mortgage and the value of the improve-

ments, and this was decreed. The chancellor said it would be inequitable and unjust to give the defendants the benefit of these improvements without compelling them to pay an equivalent therefor. The defendant's case in the present controversy is much stronger than the plaintiff's in *Benedict* v. *Gilman*, inasmuch as the judgment creditors had done nothing to mislead the party in possession, and the negligence of the latter in omitting to search for subsequent incumbrances was at least as great as that of Dillaye in this case. Judge STORY has carried the rights of a party in possession who has in good faith made improvements, altogether beyond what would be necessary to protect the defendant in this case. He says generally that courts of equity have extended the doctrine to cases where the party making the repairs and improvements has acted *bona fide* and innocently and there has been a substantial benefit conferred on the owner ( *Treatise on Eq.*, § 1237); and he has carried the principle into practice in a case decided by him in the Circuit Court of the United States. In *Bright* v. *Boyd* (1 *Story*, 478), lands had been sold by an administrator, but the sale was void because he had not given security according to the statute. The heir of the intestate had sued for and recovered the possession against the plaintiff, who derived his title under the administrator's sale The latter filed a bill in equity in the Circuit Court of the United States to recover of the heir the value of certain improvements which he had in good faith made upon the land, and which included the building of a large dwelling-house. The heir was an infant, and resided in another state; but Judge STORY notwithstanding referred the case to a master to take an account of the enhanced value of the premises, deducting the rents and profits, with a pretty strong intimation that the plaintiff was entitled to recover them, though he said he would look into the case again upon the coming in of the report. This conclusion could not probably be sustained except upon the principle that one who fraudulently stands

Mickles *v.* Dillaye and others.

by and sees another expending money in good faith upon his land, shall not reclaim the land without paying for the improvements. Chancellor WALWORTH, I think, laid down the true principle in *Putnam* v. *Richie* ( 6 *Paige*, 390 ). He decided in a case very similar to that which was before Judge Story, that where there was no fraud or acquiescence on the part of the person having the legal title, he could not be compelled, even in favor of a party in possession who had made improvements *bona fide*, to allow for such improvements ; but he said that such allowances were constantly made by courts of equity where the legal title was in the person who had made the improvements in good faith, and where the equitable title was in another, who was obliged to resort to the court for relief. This, as we have seen, is precisely the case now before the court.

In *Wetmore* v. *Roberts*, ( 10 *How. Pr. R.*, 51 ), the question we are are now considering was examined in the Supreme Court by Mr. Justice HAND, with his accustomed industry. It was a suit for foreclosure by a junior mortgagee, the defendant having purchased the premises from one who had bid them in upon a foreclosure of the elder mortgage, in which proceeding the junior incumbrancer was not made a party. It was alleged that the defendant had made improvements, in good faith, of the value of $6000, and it was decided that the premises should be sold, and that the value of the permanent improvements as well as the amount due on the elder mortgage should be paid out of the proceeds ; after which the plaintiff was to be paid the amount due on his mortgage. I refer to the authorities relied on by Judge HAND, and also to *Talbot* v. *Braddill* ( 1 *Vern.*, 184 ) and to *Coote on Mortgages*, (*pp.* 392, 561.)

I am clearly of opinion that the refusal to allow for the erection of the building was erroneous.

The judgment of the Supreme Court should be reversed, as respects the account stated by the referee, and there should be a reference in that court to take an account

Mickles *v.* Dillaye and others.

between the plaintiff and the defendant Dillaye, in which the latter should be allowed for the enhanced value of the premises on account of the improvements made by the defendants. In other respects, the order should direct the usual allowances between mortgagor and mortgagee on a bill for redemption.

HARRIS, J. The plaintiff acquired his title to the premises, such as it is, in March, 1841. The purchase price is said to have been $4000. Of this, no part was ever paid. The plaintiff executed his bond and mortgage for $2000, and, as Philo D. Mickles, the grantor, now testifies, it was agreed that the remaining $2000 should be applied upon a note which the plaintiff held against him. There was no written evidence of such an agreement, and the indorsement was, in fact, never made. At the time of the conveyance the Fitch mortgage was an outstanding incumbrance upon the premises, and yet no provision was made for its payment, nor did the plaintiff, in any way, protect himself against this incumbrance, except by the covenant of warranty in his deed. Indeed, it does not appear that the plaintiff ever so much as inquired whether the property was incumbered or not.

For five years, and more, after the conveyance, the grantor continued to possess and enjoy the premises, as he had before. He received rents in his own name; paid taxes and assessments; made improvements; and, in short, held himself out to the world as the absolute owner. There is no evidence that the plaintiff ever claimed to be the owner, or that Philo D. Mickles ever, by word or act, recognized his ownership.

At the time of the foreclosure of the Fitch mortgage, in 1846, the amount due upon the two mortgages was at least equal to the value of the premises. Certainly, it exceeded the purchase price mentioned in the plaintiff's deed. Philo D. Mickles was then insolvent. There was no inducement, therefore, for the plaintiff or Philo D. Mickles to prevent a foreclosure by paying off the mortgages. Upon the fore-

closure, the defendant Wheaton, who had then become the owner of the second mortgage, became the purchaser, and thus, had the foreclosure been perfect, both mortgages would have been satisfied. Wheaton would have become the owner of the premises, but at a cost probably exceeding their value at that time. After the sale, Philo D. Mickles inquired of Wheaton whether the premises had brought enough, and, upon being informed that they had been sold for the amount of the mortgage, he expressed his gratification that the matter was settled.

Wheaton, as purchaser, went into possession, and soon after conveyed the premises by deed, with warranty, to the defendant Robinson, who held the premises about four years and then sold to the defendant Dillaye. The latter, in 1853, "in the full belief that he was the absolute owner," as the referee has found the fact to be, proceeded to make "large and permanent and valuable improvements upon the premises, costing some $5000, more or less." The property being thus doubled in value, it became an object for the plaintiff to assert his right of redemption. Accordingly, after sleeping upon his rights, such as they were, for nearly thirteen years, he commenced this action, in 1854, claiming the right to redeem; and the question presented is whether, assuming the right, any compensation shall be made to Dillaye for the large improvements he has made.

All will agree, I think, that the plaintiff presents a case which entitles him to no greater degree of favor than the established rules of equity applicable to this case entitle him to demand. "I should have been glad," says Mr. Justice ALLEN, in pronouncing the judgment now under review, "to have found some principle upon which the defendants, who have, in perfect honesty, expended their money to a large amount in the permanent improvement of the property, by which its value and productiveness have been and are greatly enhanced, could be reimbursed, at least to the amount of the rents and profits which they had received." We are

therefore to consider whether the plaintiff stands upon any legal right whichp recludes the court, in granting the relief for which he applies, from doing substantial justice between the parties.

I admit the general rule to be that, where the simple and acknowledged relation of mortgagor and mortgagee in possession exists, the latter will not, upon redemption, be allowed for general improvements made without the acquiescence or consent of the mortgagor, especially if the improvements tend to cripple the power of redemption. *Moore* v. *Cable* (1 *John. Ch. R.*, 385), was such a case. The assignee of a mortgage, without calling upon the mortgagor or attempting to foreclose the mortgage, chose to take possession of the mortgaged premises, which consisted of wild lands, and had a part of the land cleared. The claim of the mortgagee to be allowed for what he had thus expended, was rejected. In noticing this case in his Commentaries, Chancellor KENT says: " The clearing of uncultivated land, though an improvement, was not allowed in *Moore* v. *Cable*, on account of the increasing difficulties it would throw in the way of the debtor to redeem. But," he adds, in the same connection, " lasting improvements in building have been allowed in England, under peculiar circumstances, and they have sometimes been allowed in this country, and sometimes disallowed." (4 *Kent Com.*, 167,) In a note at the same place it is further added that " all the cases agree that the mortgagee is to be allowed the expense of necessary repairs, and beyond that the rule is not inflexible, but it is subject to the discretion of the court, regulated by the justice and equity arising out of the circumstances of each particular case." Accordingly, in a recent English treatise (*Coote on Mort.*, 354) it is said to be the duty of the mortgagee in possession to keep the premises in repair, and he will be allowed the charge of permanent improvements. And HILLIARD, in his *Treatise on the Law of Mortgages*, after noticing the general rule on the subject,

says :  "The rule refusing the allowance of lasting improve-
ments has been subjected to some exceptions in special cases,
as where the mortgagee makes such improvements supposing
himself to be the absolute owner."   In support of this propo-
sition he cites the language of the chancellor of Maryland in
*Neale* v. *Hagthrop*  ( 3 *Bland. Ch. R.*, 590 ), where it is said :
"If the mortgagee has been long in possession, claiming
adversely and suffered to treat the estate as his own, and
the mortgagor stands by and permits lasting improvements
to be made,. he shall pay for them." ( *Hilliard on Mort.*, 297.)

In the case before us, the premises had been held, under the
statute foreclosure, of 1846, for more than six years before
Dillaye purchased.   The possession had been continued and
undisturbed.   The silence of the plaintiff for this long period
had encouraged the belief that those who had the property in
possession were the true owners.  Dillaye purchased, not as the
assignee of the mortgagee, but believing that he was acquiring
the property as his own.   He made the improvements never
doubting that he was the absolute owner.   The referee has
not found that the plaintiff was ignorant of the fact that the
premises had been sold upon the foreclosure, or that Wheaton
and his grantees were in possession under that sale.   All
he finds on this subject is, that " during the erection of the
improvements, the plaintiff was absent from Onondaga, and
there was no evidence that he was aware of the fact while
the improvements were progressing."   The plaintiff having
so long acquiesced in the adverse possession of the premises,
himself contributed to the mistake under which the defend-
ants acted.   Had no improvements been made, there is no
reason to believe that he would ever have asserted his right
to redeem.   Under such circumstances, he should not be
allowed, in a court of equity, to enrich himself at the expense
of one who has acted innocently.   The improvements are a
substantial benefit to the property, and, if he would redeem,
he ought, *ex æquo et bono*, to pay for them to the extent of
such benefit.

The plaintiff has found himself under the necessity of resorting to a court of equity to enforce his right. He has thus placed himself within the range of that great principle, that he who seeks equity must himself do equity. The improvements were made in the full belief that the plaintiff had no right to the property. That belief has, to some extent, been induced by the apparent acquiescence of the plaintiff in the adverse possession of the defendants. If now the plaintiff, after so great delay, will assert his right to redeem, and invoke the aid of a court of equity to enforce that right, he should be required to make equitable compensation for the benefits he will receive from the improvements. To refuse such compensation, instead of doing equity, would produce the most revolting injustice. (2 *Story's Eq. Jur.*, § 799, *id.*, § 1237.)

Comstock and Pratt, Js., did not sit in the case; all the other judges concurring,

Judgment modified and account ordered to be re-stated.