(32 Misc. Rep. 111.)

SMITH v. KETELTAS et al.

(Supreme Court, Special Term, New York County. June, 1900.)

1. TRUSTS—TRUST PROPERTY—REPAIRS.
   A portion of the corpus of a trust estate may be applied by the trustee in erecting new buildings in place of those which have become untenantable by reason of decay, and which have been condemned by the board of health as unsafe, in the absence of sufficient income from the estate for such purpose, since such expenditures are necessary to prevent permanent waste and decay of the estate.

2. COURTS—JURISDICTION—CONSTITUTIONAL QUESTIONS.
   A statute will not be held to be unconstitutional at a special term, unless it clearly conflicts with the constitution.

3. TRUSTS—ACCOUNTING.
   Though a trustee has properly expended a portion of the corpus of the trust estate to prevent a permanent waste and decay of the estate, there must be an account taken as to such expenditures before a referee.

Action by Eugene K. Smith against Edith M. K. Wetmore, executrix of Henry Keteltas, deceased, to recover an undivided one-seventh part of a certain sum received by defendant's testator as trustee. Judgment for defendant.

C. Bainbridge Smith (N. B. Hoxie, of counsel), for plaintiff.
Carter & Ledyard (Lewis Cass Ledyard, of counsel), for certain defendants.

LAWRENCE, J.   This action is brought on the part of the plaintiff to recover of the defendant, Edith M. K. Wetmore, the younger, as sole executrix under the will of Henry Keteltas, the last surviving trustee of the estate of John Gardner, deceased, an undivided one-seventh part of the sum of $230,040.36, received by said Henry Keteltas, as trustee, on the 4th of May, 1854.   John Gardner died in December, 1817, leaving a last will and testament, in which certain trusts were created for the benefit of his children.   The trust for his daughter Malvina, who afterwards married Eugene Keteltas, is the trust involved in this action, and terminated upon her death, June 20, 1894.   Prior to the termination of this trust, Henry Keteltas, son of Malvina Keteltas, had been substituted as trustee, and at the time of the transactions under consideration was sole trustee of the trust for his mother.   Prior to 1892 the city of New York instituted proceedings to acquire, for purposes of a public park, certain real estate which formed part of the trust estate, and on May 5, 1894, Henry Keteltas, as trustee, received an award for property taken, amounting to the sum of $230,040.36.   It is claimed that a large portion of the award was applied by the trustee to the construction of buildings upon vacant lots in the city of New York.   These lots had formerly been improved, but the buildings were ancient, and generally of frame construction, in some instances with brick sides or fronts.   Many of them were ordered down by the building department as being unsafe and incapable of further repair, and all of them were substantially, if not entirely, in an untenantable condition.   The trust term had been in existence nearly 60 years, and these buildings, some of them, were said to have been over 100 years old, and others 50 years old.   This case first came on for trial before Mr. Justice Werner.   After the trial was concluded and the case submitted for decision, the justice was appointed a judge of the court of appeals, and this is therefore the second trial of the case.   The plaintiff was examined as a witness on both trials upon the question as to his having received notice of the appropriation of a portion of the amount of the award by Henry Keteltas, surviving trustee under the will of John Gardner, to the erection of said buildings.   On that trial he admitted that, before this suit was brought, he knew that the money had been expended on these buildings.   On the first trial he testified as follows:

"Q. When did you first know of the erection of these new buildings by your Uncle Henry as trustee?  A. I don't know.  I knew nothing of the buildings. I knew about the receipt of the property because I read it in the paper.  Q. When did you first know that he put some of the money into the buildings? A. I knew nothing about it.  Q. Do you know it to-day?  A. I have heard so, of course.  Q. When did you first hear of it?  A. I could not remember. Q. How long ago?  A. I could not tell.  Q. You knew it before this suit, didn't you?  A. Oh, certainly.  Q. You knew it before Henry Keteltas died, did you not?  A. No, sir.  Q. Not before Henry died?  A. No, sir.  Q. But before you brought this suit you knew that this money had been expended on these buildings?  A. Yes."

On the present trial the witness says that he never knew or heard that his uncle devoted a portion of this award to payment for erection of houses until trial before Judge Werner, and then says that he first heard it from his father, who is attorney in this case; cannot tell

whether it was a year ago or two years ago; that then his father told him only that defendants made such a claim in their answer; and, when asked the direct question by his counsel whether he was mistaken in his testimony on the first trial to the effect that he did know this money had been expended upon these buildings before he brought this suit, he answered, "I think I was." It appears from the evidence that the plaintiff has, ever since the death of Henry Keteltas, been in receipt of statements of the amount of rents, and has also received his proportionate share of the rents of the property held in trust by the latter. But the claim is made by plaintiff, not only that he did not know of the appropriation of a portion of the moneys received from the award to the erection of the buildings referred to in the answer of the defendant, but that there is no evidence that any of the moneys were thus applied.

1. I think that a very strong presumption of such knowledge on the part of the plaintiff arises from the discrepancy between his testimony on the first and second trials. But, assuming that the plaintiff had no knowledge upon the subject, I also think that enough has been shown from the portions of the entries contained in the cash book of Henry Keteltas, which were admitted in evidence upon the trial, and by the testimony of the architect, Kutzner, to justify the conclusion that certain expenses were made by the trustee from moneys received upon the award for the purpose of erecting new buildings in place of those which had become untenantable by reason of decay, and which had been condemned by the board of health as unsafe.

2. This brings up the question as to the power of the trustee to appropriate any portion of the amount received from the award to defray the expense of erecting new buildings, or in restoring dilapidated buildings. The learned counsel for the plaintiff, in the brief filed by them, insist that the numerous cases in which it has been held that, as between life tenants and remainder-men or co-tenants, the life tenant is not justified in applying any portion of the corpus of the estate to defray the expense of permanent improvements to the inheritance conclusively show that, even if Henry Keteltas did devote a portion of the award to the restoration of old buildings or the erection of new buildings in place of those which had been condemned by the city authorities, or which had become unsafe for habitation, it was not within his power to do so. I do not think that the case at bar falls within the principle of those cases. The question here is rather a case of restoration than of permanent improvement. If the buildings, by reason of age, had, as is shown by the testimony, become unfit for habitation, it was, in my opinion, within the power, and it was the duty, of the trustee to preserve the estate from ruin. There is nothing to show that the income in his hands was sufficient at the time for the expenditures which were incurred for that purpose. Under such circumstances, I am of the opinion that, if he honestly and prudently expended a portion of the award in preventing permanent waste and decay of the estate, a court of equity should not decree that the amount of the expenditure thus incurred should be charged against his estate. In re Deckelmann, 84 Hun, 476, 32 N. Y. Supp. 404, per Cullen, J.; Stevens v. Melcher, 152 N. Y. 566, 567, 46 N. E.

965, remarks of Haight, J. See, also, Putnam v. Ritchie, 6 Paige, 391, 403–405; Mickles v. Dillaye, 17 N. Y. 80.

3. I do not regard the case of Greason v. Keteltas, 17 N. Y. 491, as containing anything which is adverse to these views. In this case the allegation is that the trustee, Henry Keteltas, appropriated to his own use the amount of the award, or disposed of the same in violation of the trust reposed in him, and the plaintiff asks, as equitable relief, that the amount of the award may be declared and adjudged to be real estate, and that the defendant, Edith M. K. Wetmore, the younger, as executrix of the last will and testament of Henry Keteltas, deceased, account and pay to the plaintiff one-seventh part thereof, with interest from July 20, 1894, and the remainder thereof to the parties entitled thereto, who are made defendants in this action; that the said sum of $230,040.36 be declared a first lien on all the property of which Henry Keteltas died seised, etc.; and that an injunction issue restraining said Edith M. K. Wetmore, the younger, executrix of the last will and testament of Henry Keteltas, deceased, from parting with or disposing of any of the property of which he died seised, and also restraining the other beneficiaries under his will from taking possession of any of the property devised or bequeathed to them by him. It was held in Greason v. Keteltas that a trustee holding a legal fee determinable when the purposes of the trust shall cease has power at law to lease for a term which may extend beyond the period of his trust estate, subject to the jurisdiction of a court of equity to annul the lease, if unreasonable or improvident; also that a trust created by will, to receive the rents and profits of unoccupied and unimproved real estate, liable to large taxes and assessments, for the lives of the testator's children, and out of the same to uphold, support, amend, repair, etc., and pay all charges on the land, authorized a lease for 21 years, with covenant to renew or pay for buildings to be erected by the lessee; that such a covenant was binding upon the trustee personally; and that one who succeeds to the trust, and has control of the estate, is liable upon such covenant in a lease made by his predecessor in the trust. It was also held that the complaint in that case made a case for damages, but none for specific performance. The right of the trustee to make permanent improvements under the circumstances now presented to the court was neither discussed nor alluded to. I am of the opinion, therefore, that if the court can see that Henry Keteltas did what the court would, in its opinion, if applied to under the act of 1839 (Laws 1839, c. 345), have authorized him to do, to wit, appropriate a portion of the award to the preservation of the estate from permanent devastation and ruin, it may, sitting as a court of equity, ratify his acts, and refuse to enjoin the executors and beneficiaries of his estate, as demanded in the complaint. See Cogswell v. Cogswell, Ch. Rep. (2d Ed.) 230.

4. The learned counsel for the plaintiff contends, however, that the act of 1839 above referred to is unconstitutional and void. I shall not, sitting at special term, undertake to decide that such act was unconstitutional, it having frequently been held that such judgment should not be pronounced at special term, unless the statute clearly conflicts with the constitution, and that every presumption is in favor of

the constitutionality of the acts of the legislature. See In re Lexington Ave., 63 How. Prac. 464; In re Railroad Co., 70 N. Y. 327; In re Bayard, 25 Hun, 546; Railroad Co. v. Anderson, 3 Abb. N. C. 434.

5. Assuming that the trustee had power, under all the circumstances disclosed by the evidence, to make the expenditures for the construction of buildings above referred to, there must be an account taken as to such expenditures before a referee. Draw decision and interlocutory judgment accordingly, directing an accounting, and settle said decision and judgment on two days' notice.

Ordered accordingly.