### SMITH v. KETELTAS et al.

(Supreme Court, Appellate Division, First Department. June 14, 1901.)

TRUSTS—REAL ESTATE—IMPROVEMENT—AUTHORITY—EXPENDITURE — CREDIT— TRUSTEE—RIGHTS.

A part of the land of a trust estate was condemned for a park, and the buildings on a part of the remainder had become unsafe and had been condemned by the building department, but there was no evidence that the trustee had not performed his duty in making repairs. The trustee used a part of the award received for the park in tearing down the condemned buildings and erecting modern ones. *Held*, that the contention that the trustee was not entitled to credit for the money so expended, because he had no authority to use the corpus of the estate in erecting new buildings, could not be sustained, since the expenditure was proper and of advantage to the estate, in rendering unproductive property productive.

Appeal from special term.

Action by Eugene K. Smith against Alice Keteltas, individually and as one of the trustees of the last will and testament of Henry Keteltas, deceased, and others. From a judgment of the special term (66 N. Y. Supp. 260) in favor of defendants, plaintiff appeals. Affirmed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

C. Bainbridge Smith, for appellant.
Lewis Cass Ledyard, for certain respondents.
John E. Parsons, for respondent Alice Keteltas, as committee.

O'BRIEN, J. The nature of the action and the questions involved are fully presented in the opinion of the learned judge at special term, which is reported in 32 Misc. Rep. 111, 66 N. Y. Supp. 260, and from which we take the liberty to quote:

"This action is brought on the part of the plaintiff to recover of the defendant Edith M. K. Wetmore, the younger, as sole executrix under the will of Henry Keteltas, the last surviving trustee of the estate of John Gardner, deceased, an undivided one-seventh part of the sum of $230,040.36 received by said Henry Keteltas as trustee on the 4th of May, 1894. John

Gardner died in December, 1817, leaving a last will and testament in which certain trusts were created for the benefit of his children. The trust for his daughter Malvina, who afterwards married Eugene Keteltas, is the trust involved in this action, and terminated upon her death, June 20, 1894. Prior to the termination of this trust, Henry Keteltas, son of Malvina Keteltas, had been substituted as trustee, and at the time of the transactions under consideration was sole trustee of the trust for his mother. Prior to 1892 the city of New York instituted proceedings to acquire, for purposes of a public park, certain real estate which formed part of the trust estate; and on May 5, 1894, Henry Keteltas, as trustee, received an award for property taken amounting to the sum of $230,040.36. It is claimed that a large portion of the award was applied by the trustee to the construction of buildings upon vacant lots in the city of New York. These lots had been formerly improved; but the buildings were ancient, and generally of frame construction, in some instances with brick sides or fronts. Many of them were ordered down by the building department, as being unsafe and incapable of further repair; and all of them were substantially, if not entirely, in an untenantable condition. The trust term had been in existence nearly sixty years, and these buildings, some of them, were said to have been over one hundred years old, and others fifty years old. * * * The plaintiff was examined as a witness on both trials upon the question as to his having received notice of the appropriation of a portion of the amount of the award by Henry Keteltas, surviving trustee under the will of John Gardner, to the erection of said buildings. On that trial he admitted that, before this suit was brought, he knew that the money had been expended on these buildings. * * * On the present trial the witness says that he never knew or heard that his uncle devoted a portion of this award to payment for erection of houses until trial before Judge Werner, and then says that he first heard it from his father, who is attorney in this case; cannot tell whether it was a year ago or two years ago; that then his father told him only that defendants made such a claim in their answer; and when asked the direct question by his counsel whether he was mistaken in his testimony on the first trial, to the effect that he did know this money had been expended upon these buildings before he brought this suit, he answered, 'I think I was.' It appears from the evidence that the plaintiff has, since the death of Henry Keteltas, been in receipt of statements of the amount of the rents, and has also received his proportionate share of the rents of the property held in trust by the latter."

In passing upon the claim of the plaintiff that he did not know of the appropriation of a portion of the moneys received from the award to the erection of the buildings, and that there is no evidence that any of the moneys were thus applied, the learned judge says:

"I think that a very strong presumption of such knowledge on the part of the plaintiff arises from the discrepancy between his testimony on the first and second trials. But, assuming that the plaintiff had no knowledge upon the subject, I also think that enough has been shown from the portions of the entries contained in the cash book of Henry Keteltas which were admitted in evidence upon the trial, and by the testimony of the architect, Kutzner, to justify the conclusion that certain expenses were made by the trustee from moneys received upon the award for the purpose of erecting buildings in place of those which had become untenantable by reason of decay, and which had been condemned by the board of health, as unsafe."

The other necessary facts connected with the issue presented upon this appeal are to be found in Greason v. Keteltas, 17 N. Y. 491, wherein the court of appeals gave a construction to the will of John Gardner; and one of the judges, in the opinion in that case, discusses the extent of the power conferred upon the trustees by the will. The fundamental question which was presented upon this trial, and which is before us upon this appeal, is as to the power of the trustees to ap-

propriate any portion of the amount received from the award to defray the expense of erecting new buildings or in restoring delapidated buildings. We have taken our statement from the opinion, and could safely place our affirmance upon the findings of fact and conclusions of law of the learned trial judge, were it not that the importance of the question involved, and the earnestness with which the contention has been made that the conclusion reached was legally wrong, make it proper that we should briefly refer to the authorities which we think support his decision.

The general rule, as stated in 2 Perry, Trusts (5th Ed.) § 475, with respect to a trust created by will which is imperative, is as follows:

"The duty and power given in such trusts must be strictly performed. There is no room for discretion or divergence from the particular directions contained in the instrument; as, where money was left to a trustee to be laid out in lands, he had no discretion to purchase land with a part of the money, and to expend the remainder in repairs and improvements."

The authorities cited in support of this rule are largely cases arising either between co-tenants or between life tenants and remainder-men. In Re Deckelmann, 84 Hun, 476, 32 N. Y. Supp. 404, Mr. Justice Cullen, after stating the rule as between life tenants and remainder-men, said:

"But there is now a tendency to limit the application of the rule stated. In the recently decided case of Stevens v. Melcher, 80 Hun, 514, 30 N. Y. Supp. 625, it was held that certain permanent repairs on the trust realty should be charged to the corpus of the trust, not to the equitable life tenant."

In that case (Stevens v. Melcher) Mrs. Stevens, with the consent of the trustees, had furnished money for the construction of a building upon the trust estate; and upon appeal to the court of appeals, reported in 152 N. Y. 566, 46 N. E. 968, it was said:

"If we were to treat Mrs. Stevens as a life tenant, and limited in authority to the rules of the common law, there might be some difficulty in sustaining the conclusion reached by the general term with reference to this item of her claim, but such does not appear to be her relation to the estate. The testator did not see fit to give her the possession and control of the million dollar trust, or of the real estate set apart for and composing that trust, but, instead thereof, gave the same to others in trust 'to hold, invest, and manage' during her life, to collect the income and the receipts therefrom, and pay to her, and upon her decease to divide the trust estate or fund among the remainder-men specified. The trustees were thereby made the owners and given the possession of the trust estate, and as such had certain duties to perform with reference thereto. They were required to invest and manage so as to produce an income for Mrs. Stevens, and to care for and preserve the principal of the estate for the benefit of the remainder-men. The relation of Mrs. Stevens was that of life beneficiary under the trust,—the cestui que trust of her trustees."

And in Chaplin, Exp. Trusts & Powers, § 437, in discussing the question of what may and may not be deducted from income, it is said:

"The starting point must be the general and rather strict principle that the trustee or any life tenant is not authorized to run up charges for repairs or improvements against the remainder-man, or eat into the capital. * * * It seems, however, that this rule has become somewhat relaxed, and the tendency of the later cases is to limit its application."

In support of this last statement the author refers to the two decisions from which we have already quoted (Stevens v. Melcher and

In re Deckelmann, supra), and, while he states the general rule that
the interest of a remainder-man is not to be depleted or charged with
improvements unless authority to that end can be derived from some
competent source, he adds many exceptions, one of which we think
applicable to the facts here appearing, and which he states as fol-
lows:

"In cases where, on accounting, all parties being before the court, it ap-
pears that the net result of the trustee's use of the corpus for outlays, even
though unauthorized, has in fact resulted in no loss, or shows a gain, and
where, accordingly, in adjusting the accounts the court may set off the
depletion of corpus against its accretion according to general principles
of equity, there it will be done."

An examination of the authorities which sustain the general rule,
as well as those which, from the necessities of particular cases, have
ingrafted upon it numerous exceptions, will show, with respect to
the action of trustees in dealing with the trust estate, that where
their course is dictated by good motives, by wise judgment, and in
accordance with prudent and sound business principles, the tendency
of the courts is to treat the trustees fairly and justly. This we
understand to be but another way of saying what has been so well ex-
pressed in the leading case in this state, of King v. Talbot, 40 N. Y.
76, relating to the duty of trustees in making investments:

"That the trustee is bound to employ such diligence and such prudence in
the care and management as, in general, prudent men of discretion and in-
telligence employ in their own affairs."

There was no proof given that the trustee did not perform his duty
with respect to using such part of the income as was proper in keep-
ing the buildings in repair; and the presumption, in the absence
of evidence to the contrary, being that he performed his duty in that
regard, we must assume, as was in effect found by the special term,
that the buildings upon the lots constituting a part of the original
estate left by John Gardner had, merely by lapse of time, become
so worn out and dilapidated as, without further repair, to be ordered
down by the building department. It was clearly to the advantage of
both the life tenant and the remainder-man that, after these buildings
were removed, they should be succeeded by other and more modern
buildings; and the evidence shows that the action of the trustee in
the erection of the new buildings was wise and prudent, and for the
best interest of the property. As it was of advantage to the estate,
therefore, that new buildings should be substituted in the place of
those which had become useless or which had been taken down by
order of the board of health, the only remaining question is as to
whether the trustee was justified in using any portion of the award
for this purpose, or was obliged to allow the property to remain in
an unproductive state. This latter, certainly, would not be for the
interest of any one; and, if new buildings were to be substituted for
the old, we would have (leaving out the possibility of the trustee ad-
vancing his own money for the improvement, which he might be re-
luctant to do) but one or the other of the following means available
from which funds could be secured to rebuild, namely: Either to
borrow on a mortgage, which, as we take it, would be equally objec-

tionable to the appellant, or else to use a portion of the award, as was done. Of these available means, clearly the latter was less objectionable, because it was merely changing what was real estate (for that, legally, was the nature of the award) into other real estate. In other words, it was converting a portion of the corpus of the estate so as to create, in another form, property which equally constituted a portion of the corpus of the estate. As we understand the argument of the appellant, however, the insistence is twofold, namely: That under no circumstances was it within the right or power of the trustee to use any portion of the corpus of the estate to erect the new buildings or make improvements; and, secondly, that he should, out of the income, from year to year, have expended sufficient to keep the property in a proper, tenantable condition. The first of these contentions we have briefly referred to; and the second, so far as it relates to an accumulation of income, we think would have been impracticable, because, as already stated, it is fair to assume, on the proof before us, that the condition of the buildings resulted, not from the necessity of temporary repairs, but from age, which had rendered them so delapidated and unsafe that their removal became necessary. To meet such a contingency as the destruction of the buildings by age, out of the income, would necessarily have required, during the long years of the trust, a reservation of a sufficient amount of income to replace the old with new buildings. This, however, as we have said, would have been impracticable; for, in addition to the difficulty of determining just what amount should be annually reserved for that purpose, there would be the question—and a serious one—as to what extent those entitled to the income could be deprived of a portion thereof for the benefit of those who were eventually to succeed to the corpus of the estate. On this branch of the case, we entirely agree with the respondent that:

"It cannot be contended with any show of reason that the trustee was bound, in administering this trust through a period of eighty years, to reserve and withhold from the life tenant moneys out of the income for the purpose, not of repair, but of erecting wholly new buildings, when those already upon the premises should, by reason of lapse of time, become incapable of further repair."

Apart, therefore, from the question as to whether the plaintiff is estopped from opposing such outlay by reason of his knowledge thereof and failure to object, or as to whether or not the act of 1839 (chapter 345, Laws 1839) conferring upon the trustees of this estate certain powers is constitutional, or gives to the trustee, if constitutional, the right to make the expenditure, it will be seen that we have reached the conclusion that, upon the facts here appearing, the principle laid down by the learned judge at special term to be applied upon the accounting in reference to such expenditure as it may be proved the trustee made is right and proper, not alone because it is supported by authority, but because it is clearly equitable and just. Had the property been left unimproved, and were the award in a trust company still intact, the plaintiff would be no better off than he is as the result of the taking of a portion of the award and improving the property; but we think it would be inequitable, to a degree, to

permit him to succeed to an interest in the estate which has been enriched by the action of the trustee, and, while obtaining all the benefits of the expenditure, to impose upon the trustee or his estate the burden of bearing the entire cost of the improvements. To what extent the trustee may have used the award in erecting new buildings and in improvements it is not our purpose now, any more than it was of the special term upon the trial, to ascertain. All that has been decided by the interlocutory judgment is that such amounts as may be proved to have been paid out of the award by the trustee for legal expenses and for the construction of buildings upon the trust estate he should be credited with, and out of the residue of the award, after deductions so made, the plaintiff is entitled to receive one-seventh, which judgment we think is right, and should be affirmed, with costs. All concur.