In the Matter of the Estate of CHARLES ANDERSON, Also Known as CARL G. ANDERSON, Deceased.

Surrogate's Court, Kings County, January 10, 1935.

*Thomas J. Snee*, for the public administrator.

*Gustave Lange*, for the Swedish Consul.

*Hamilton Ward*, *Attorney-General of the State of New York*.

*Milton Soloman*, special guardian for unknown heirs at law.

WINGATE, S. The case at bar presents a number of unusual features, not the least of which is the fact that the real question

respecting the proper distributee or distributees of the fund in the hands of the accountant is raised by the divergence in views on the subject entertained by the present Vice Consul of Sweden in New York and by his immediate predecessor in that office.

The present decedent died on April 30, 1924, a domiciled resident of the county of Kings. Administration was granted to the public administrator eight days later. The gross estate amounted to $1,980.08, the entire principal of which came into the hands of the public administrator within five weeks after his qualification. The only disbursements have been for funeral and administration expenses, aggregating $330.20 and payment of one claim of $25, and the entire balance of $1,624.88, except for gradual accretions of interest, has been in the hands of the fiduciary ever since. The question to be decided is the proper recipient of this fund.

The decedent was born at Stockholm, Sweden, on May 31, 1860, and, according to the testimony before the court, never became a naturalized American citizen. He was a foundling and there are no records respecting his parentage. He was brought up in the Municipal Orphans and Lost Children's Home in Stockholm and married Honorine Alma Maria Nylander on September 4, 1881. The couple came to this country about 1883. One child was born to them, but it died in infancy. Decedent's wife predeceased him.

It was established to the satisfaction of the court that the decedent made certain efforts to ascertain the identity of his parents or blood relatives, but these proved fruitless. In the children's home he had been designated only by number and had assumed the name of Anderson after he left it. Under these circumstances it is obvious that he had no natural relatives so far as may ever be possible of ascertainment.

The nearest kindred of the predeceased wife living at the time of decedent's death, and who are all still living at the present time, are three sisters, Hulda Felixina Anderson, Helga Ida Svensson, Hilma Adele Lundahl, a brother, Karl August Anderson, and four children of a deceased brother, Bror Johan Anderson, whose names are Ester Alfa Anderson, Johan Allan Anderson, Disa Hilma Anderson and Alvar Solve Anderson. All of these are Swedish subjects and reside there, except the last named, who is said to reside at 282 Flatbush avenue, Brooklyn, having emigrated to this country on June 4, 1923. His citizenship has not been established.

Since the fund which is presently distributable constituted " the surplus of " an " estate not distributed on the first day of May, nineteen hundred and twenty-nine," within the provisions of

section 2 of chapter 518 of the Laws of 1929, it is obvious that were these persons all citizens of the United States, it would be payable, one-fifth to each living brother and sister of the deceased wife and one-twentieth to each child of her deceased brother (*Matter of Irving*, 153 Misc. 807), and the same devolution would be pursued in spite of the fact that all except Alvar Anderson are Swedish subjects unless the contention of the present Vice Consul is correct. He maintains that he is entitled to receive the entire distributable estate by reason of certain treaty provisions to which he draws attention.

The primary treaty provision thus invoked is contained in article VI of the treaty between the United States and Persia of 1856, as follows (11 U. S. Stat. 709, 710):

" Article VI. In case of a citizen or subject of either of the contracting parties dying within the territories of the other, his effects shall be delivered up integrally to the family or partners in business of the deceased; and in case he has no relations or partners, his effects in either country shall be delivered up to the consul or agent of the nation of which the deceased was a subject or citizen, so that he may dispose of them in accordance with the laws of his country."

It is contended that this treaty stipulation is applicable here by reason of the inclusion in the contemporaneous Swedish treaty of a " most favored nation " clause.

" This Treaty with Persia was terminated on May 10, 1928, but, as this was subsequent to the death of the * * * [Swedish] national whose estate is in question, the termination does not affect the present case." (*Santovincenzo* v. *Egan*, 284 U. S. 30, 36.)

If, therefore, the rights of the Swedish Consul to receive distribution of the present estate vested on the date of death, namely, April 30, 1924, they were not only not impaired by the abrogation of the treaty by which such rights were created, but could not be affected by the subsequent passage by the Legislature of the State of New York of chapter 518 of the Laws of 1929,* which for the first time created a new set of next of kin for a person who had died without any blood relatives and whose estate had not been distributed on May first of that year. This follows for the reasons that the disposition of the property of aliens dying within the territory of the respective parties to a treaty is within the scope of the treaty-making power of the Federal government, and any conflicting law of a State must yield (*Hauenstein* v. *Lynham*, 100 U. S. 483, 489; *Geofroy* v. *Riggs*, 133 id. 258, 266; *Missouri*

v. *Holland*, 252 id. 416, 434; *Sullivan* v. *Kidd*, 254 id. 433, 440; *Asakura* v. *Seattle*, 265 id. 332, 343; *Todok* v. *Union State Bank*, 281 id. 449, 453), and, further, because an existing vested right may not be impaired by subsequent legislation. (*McClement* v. *Order of Foresters*, 222 N. Y. 470, 477; *Hollenbach* v. *Born*, 238 id. 34, 38, 39.)

The question of devolution, therefore, resolves itself purely into one of whether on April 30, 1924, the terms of the existing treaty between the United States and Sweden were broad enough to give to the consular officers and agents of the latter government the rights created in favor of the similar representatives of Persia by the treaty of 1856 with that country.

The text of the convention with Sweden then in force was proclaimed on March 20, 1911. Its second article, so far as here pertinent reads: " The consuls-general, consuls, vice-consuls-general, vice consuls, deputy consuls-general, deputy consuls, and consular agents of each of the two High Contracting Parties shall enjoy reciprocally, in the States of the other, all the privileges, exemptions, and immunities that are enjoyed by officers of the same rank and quality of the most favored nation." (37 U. S. Stat. 1480.)

It is obvious that by this clause the particular rights which are possessed by the corresponding officials of any other country are expressly conferred upon the representatives of Sweden and are, in effect, incorporated into the Swedish treaty.

By reason of the provision in the Persian treaty that the personal effects of its subjects dying in this country without relatives or partners should " be delivered up to the consul or agent " of that nation, a corresponding right to receive and demand such effects was created in favor of the Persian Consul or agent, with the result, since the Swedish officers are entitled to " enjoy  *  *  * all the privileges " accorded to the representatives " of the most favored nation " that they were also entitled, during the duration of both treaties, to the same privilege to receive and demand the effects of one of their subjects coming within the description of the Persian treaty. (*Santovincenzo* v. *Egan*, 284 U. S. 30, 40.)

Since these rights attached at the moment of the decedent's death, they were, on the authorities cited, not subject to subsequent divestment either by the abrogation of the Persian treaty or by the act of the Legislature of the State of New York.

It follows that the net estate is here to be paid over to the Vice Consul of Sweden in New York.

Enter decree on notice.