In the Matter of the Estate of EMIL BOMMER, Deceased.

Surrogate's Court, Kings County, May 22, 1936.

*Grossman & Combs*, for Anna L. E. Bommer, widow, petitioner.

*Carl S. Heidenreich* [*Charles A. Kussmaul* of counsel], for Gustav Bommer and John F. Voelkel, two of the executors.

*Paul G. Gravenhorst*, special guardian for Emil Leopold Froehlich and Harvey O. Bommer, infant legatees.

*Charles F. Gehrmann* [*William F. Roche* of counsel], executor and attorney *pro se*.

*Stewart & Shearer*, for the United States Trust Company, as trustee under the trusts established by the will.

*Cotton, Franklin, Wright & Gordon*, for Dartmouth College, residuary legatee.

WINGATE, S. It is fortunately rare that a court is placed in the slightly anomalous and somewhat embarrassing situation inherent in the present litigation.

As a member of the Decedent Estate Commission, upon the recommendation of which section 18 of the Decedent Estate Law was incorporated into the statutes of this State, the court, as an individual, is completely conversant with the motives and purposes which actuated the Commission, and by reason of numerous conferences with legislative leaders in respect to the proposed enactments, and the fact that the recommendations of the Commission were crystallized into law in substantially unaltered form,

it possesses, still as an individual, a clear conception of the actual legislative intent in the enactment of these laws. Use of this personal knowledge is, however, inhibited by basic rules of decision, and the only bases of interpretation which may be employed are the words of the enactment when read in the light of the explanatory notes which were before the Legislature at the time of the consideration of the proposed bills.

The purpose of the Commission, as stated in its original report, submitted to the Legislature of 1928 (Legis. Doc. 1928, No. 70), which may properly be imputed to the Legislature in the subsequent adoption of its recommendations (*American Historical Society* v. *Glenn*, 248 N. Y. 445, 451, 452; *People* v. *Schweinler Press*, 214 id. 395, 404; *Matter of Greenberg*, 141 Misc. 874, 882; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Quenzer*, 152 Misc. 796, 799), reads in part as follows (p. 13): " in place of dower, the Commission recommends that there be substituted the right of the widow to take her intestate share against the provisions of the will. Thus disinheritance or unfair discrimination will be avoided. We do not propose to go as far as Pennsylvania did, because that Commonwealth permits the surviving spouse to elect to take the entire intestate share *outright* as against the terms of the will. It does not seem to the Commission to be desirable that the right to take the intestate share should be given to the surviving spouse in every estate, regardless of its amount. But while immediate necessities should be provided for, there should be some limitation by way of permitting the income only upon the balance of the intestate share to be paid over during the life of the surviving spouse. Therefore, in the larger estates the Commission proposes to preserve to the testator a right to create a trust, with income payable to the wife, upon a principal equal to or greater than her intestate share. In such cases, the widow will not be permitted to defeat her adequate testamentary benefits by any right of election."

In effectuation of the stated purpose, the Commission recommended and the Legislature enacted section 18 of the Decedent Estate Law, which, so far as presently pertinent, reads as follows: " 1. * * * a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the * * * exceptions contained in this section. * * *

" (d) Where the will contains an absolute legacy or devise, whether general or specific, to the surviving spouse, of or in excess of the sum of twenty-five hundred dollars and also a provision for a trust for his or her benefit for life of a principal equal to or

more than the excess between said legacy or devise and his or her intestate share, no right of election whatever shall exist in the surviving spouse. * * *

" (f) Where the aggregate of the provisions under the will for the benefit of the surviving spouse, including the principal of a trust, or a legacy or devise, or any other form of testamentary provision, is less than the intestate share, the surviving spouse shall have the limited right to elect to take the difference between such aggregate and the amount of the intestate share, and the terms of the will shall otherwise remain effective.

" (g) The provisions of this section with regard to the creation of a trust, with income payable for life to the surviving spouse, shall likewise apply to a legal life estate or to an annuity for life or any other form of income for life created by the will for the benefit of the surviving spouse. In the computation of the value of the provisions under the will the capital value of the fund or other property producing the income shall be taken and not the value of the life estate."

Laying aside, therefore, the personal knowledge of the court respecting the actual legislative intent in the enactment, and analyzing the situation on the basis of its wording alone, as read in the light of the quoted note, it is obvious that the remedial change, the effectuation of which was intended, was the creation of a minimum survivorship right in the widow to the extent of that portion of the property of the decedent which she would have received outright had he died intestate. In other words, her basic rights are measured and defined by the underlying conception of what she would have been entitled to receive from his estate in the event of intestacy, with the sole difference that the testator is granted the limited power to give her for life only (with the exception of $2,500) that which she would have received outright had no will been made.

In the most frequently encountered situation of a surviving spouse and children, the former, on intestacy, would receive one-third of the net estate. This does not, of course, mean that she would be solely entitled to one particular asset and have no rights in another, but that she becomes a tenant in common, to the extent of one-third, in all of the property of the decedent after the payment of funeral and testamentary expenses and debts.

This basic intestate right is preserved to her by section 18 as against any will which the testator may see fit to draw with the sole exception that in place of an outright gift to her thereof, he may, except as to $2,500, give her merely an equivalent life use.

Under this conception of the statute, therefore, the sole question for decision in any controversy respecting the right of a surviving spouse to elect against a will, is as to whether or not the document in fair substance and effect gives her for life that which she would have received outright on intestacy. If it does, she has no right of election except possibly as to $2,500 in cash, of which the husband may not deprive her in any event. If on the contrary, she is to be permitted either wholly or partially, as the particular circumstances may warrant, to disregard and avoid the terms of the will.

This was the result attained by this court in *Matter of Curley* (151 Misc. 664), the modification of which by the appellate courts (245 App. Div. 255; affd., without opinion, 269 N. Y. 504) aroused the statewide storm of protest which resulted in the prompt enactment of chapter 234 of the Laws of 1936, adding paragraph (h) to subdivision 1 of section 18, and of chapter 378, declaring the grant of certain specified powers and immunities to testamentary trustees void as contrary to public policy.

The will in the *Curley* case was a somewhat exaggerated example of the type of document increasingly effected by certain testamentary draftsmen, which purported to give substantially unlimited authority to the fiduciaries with a minimum of responsibility and accountability.

If the authorizations and immunities therein purported to be granted were to be deemed valid, there would be small occasion for a difference of opinion as to the actuality of an infringement of the basic rights of the widow to receive for life that to which she would have been entitled in possession had no will been executed. The basic difference of opinion between this court and those of review lay in the circumstance that this court deemed certain of the authorities and immunities to the trustees which had been written into the document as so contrary to the fundamental conceptions of trusts as to be patently invalid and nugatory.

The outstanding characteristics and obligations of a trustee have been repeatedly defined. This court was of the opinion that the innumerably reiterated obligations of such a fiduciary were indispensably inherent in the office; that " there appertains to the relation of trustee and *cestui que trust,* a duty to be faithful, to be diligent, to be prudent in an administration entrusted to the former " (*King* v. *Talbot,* 40 N. Y. 76, 84); " that fidelity imports sincere and single intention to administer the trust for the best interest of the parties beneficially interested " (Id. 85); " that the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ

in their own like affairs " (Id. 85–86); and, finally, that " a trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464.)

If, as all of the appellate courts of this State have iterated and reiterated on innumerable occasions, the duties and responsibilities of an individual intrusted with the conduct of a trust are those outlined, it would seem to follow as a logical conclusion that where a property holding was contemplated in which the obligations of the holder were materially different from those enumerated, one of two results would be inevitable. Either the holding would not be a trust in the sense in which the term is properly employed, or, if a trust, then from the very nature of such a relationship, the holder could not possess the powers and immunities inherently contradictory of a trust relationship.

Which of these alternative determinations is to be attained was, this court believed, to be governed by considerations analogous to those noted by Judge (now Chief Judge) CRANE in *Matter of Durand* (250 N. Y. 45, 53): " The dominant, underlying principle * * * is to carry out as far as possible within the meaning of the statute, the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question."

The situation under the Curley will, in the estimation of this court, was that if the outrageous authorities and immunities which were purported to be granted to the trustees were valid, there was no trust in the proper sense of the term. The testator obviously desired to erect a trust; therefore, since the only circumstance which prevented the effectuation of this unquestionably dominant purpose was the inclusion of these nefarious provisions, they would be deleted and the main objective of the testator attained. The Appellate Division adopted the other alternative and held that the entire trust was bad for all purposes there pertinent.

The feature of the appellate decision which precipitated the State-wide clamor for its legislative repeal was the statement (245 App. Div. 255, at p. 257) that " To entitle a testator to take away from a surviving spouse certain benefits which the law gives that spouse in case of intestacy, by the creation of a trust from which the survivor will derive merely income for life, the trust should comply with the terms of section 111 of the Decedent Estate Law and section 21 of the Personal Property Law, and the trustee should be bonded."

This was a categorical and unequivocal determination that the only variety of trust which, under paragraph (d) of subdivision 1 of section 18 of the Decedent Estate Law, would defeat the right of a surviving spouse to receive an outright share of the estate as in intestacy, was one in which investment of the principal was limited to legally authorized securities and in which the trustee was bonded.

Experience indicates that such a rule in a very considerable proportion of cases would result in an entire disruption of the estates involved by reason of enforced liquidation of closely held businesses. It is also contrary to the understanding of this court in respect to the theory underlying the entire enactment of section 18, as hereinbefore noted, of the right preserved to the surviving spouse to receive in trust for life merely that which in the absence of a will she would have been entitled to take in absolute possession.

In spite of these considerations, however, the mandatory rule of *stare decisis* renders the decision an authority binding on this court as to all testators who died prior to April 3, 1936, the date on which chapter 234 of the Laws of 1936 became effective, since the contention that that statute may be given a retroactive effect cannot be validated.

Authority which is conclusive so far as this court is concerned has determined that under the enactment contained in chapter 229 of the Laws of 1929, a surviving spouse received a right to elect to take her intestate share in an estate unless the will of her deceased spouse erected a trust for her benefit of a sum equal to such share which should be invested in legally authorized securities. Obviously this right is a thing of value as total fee ownership is more desirable than mere enjoyment of the same property for a limited term. The effect of the judgment of the Appellate Division is, therefore, a declaration that this right accrued to each individual whose spouse died after August 31, 1930, by reason of the terms of the enactment then effective, and in consequence of the authority of the tribunal enunciating this interpretation, it becomes, for present purposes, as much a part of the statute as if incorporated therein *in hæc verba*. It follows that since the

will in the case at bar permits investment by the trustee in securities other than those legally authorized, the present petitioner obtained on the testator's death a conditionally vested right to receive outright one-third of a cross-section of the estate and, prior to the effective date of the amendment, caused this conditional right to mature into an absolutely vested one by the performance of the conditions prescribed for its consummation.

It follows, therefore, that at the time of the taking effect of the corrective enactment she had a vested right, an attempted diminution of which would be nugatory as an infringement of constitutional guaranties. (*Appleby* v. *City of New York*, 271 U. S. 364; *Fletcher* v. *Peck*, 6 Cranch, 87, 136; *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 624, 656; *Farrington* v. *Tennessee*, 95 U. S. 679, 683; *Carondelet Canal Co.* v. *Louisiana*, 233 id. 362, 373, 378; *Jacobus* v. *Colgate*, 217 N. Y. 235, 240; *McClement* v. *Supreme Court, I. O. F.*, 222 id. 470, 477; *Hollenbach* v. *Born*, 238 id. 34, 38, 39; *Matter of Craig*, 97 App. Div. 289, 293; affd., 181 N. Y. 551; *Matter of Vanderbilt*, 172 id. 69, 73; *Matter of Anderson*, 154 Misc. 132, 135; *Matter of Irving*, 153 id. 807, 811; *Matter of Killough*, 148 id. 73, 86.) A contrary view is based on the doctrine of recall of judicial decisions which has made little headway in this country in spite of sporadically emitted propaganda in its support.

By reason of the binding authority of the decision of the Appellate Division of this department, in *Matter of Curley*, therefore, this court is constrained to determine that the trust for the widow erected in the will at bar was not a compliance with the provisions of paragraph (d) of subdivision 1 of section 18 of the Decedent Estate Law, since it permitted investment of the principal funds in legally unauthorized securities, and that in consequence the widow is entitled to receive her intestate share of the estate outright.

Aside from this feature of the will, however, there is another ground on which this court would be inclined to attain the same result as an independent matter.

The benefits provided for the widow by the will were of three varieties, *first*, specific bequests of certain partially enumerated objects, such as jewelry, automobiles, etc., which have an apparently conceded value approximating $4,500; *second*, the use and occupation for life of the testator's city and country houses; and *third*, a trust in the principal sum of $500,000 measured by the life of the widow. In respect to this trust, the will first directs that its income shall be applied to the payment of the " taxes, assessments, water rates and insurance premiums " on the city and country houses, the life use of which is given to the widow " and the remainder to the use of my said wife."

In a consideration of the adequacy of this trust as a compliance with the fair intendment of paragraph (d) of subdivision 1 of section 18 of the Decedent Estate Law for the purpose of foreclosing a general right of election by the widow, it will be assumed that the fair principal value of the two houses of which the widow is granted the life use, plus the $500,000 principal of the trust, is equal to one-third of the net estate. The question thereupon arises as to whether it is permissible for a testator to defeat the primary right of the widow to receive outright one-third in value of his estate, by a gift or series of gifts which, in practical effect, amount to a mortmain regimentation of her future life.

The entire theory underlying the enactments contained in section 18 is that the widow is not to be viewed as an almoner beseeching the bestowal of the crumbs from her master's table, but as a partner and aliquot co-owner of the family property which chances to rest in the legal ownership of the nominal head of the family partnership. Upon the dissolution of this theoretical firm in consequence of the death of one of its members, it should no more be possible for the one retiring, by *ex parte* fiat, arbitrarily to assign to the other a particular portion of the community property, than would a similar attempt by a retiring partner in a business concern.

So long as it be conceded, as it must, that the survivor takes as a matter of right and not of grace, it must follow that the fair one-third value to be accepted in satisfaction must be money or money's worth of a proportionate part of a fair cross-section of the estate, and cannot be a specified asset which possesses an income value invidiously disproportionate to other assets of the estate which are directed to others.

The widow has presumably performed her portion of the partnership labors and is entitled to enjoy the fruits of her share of its capital in any manner to which her fancy may incline her, unhampered by the mortmain dictates of her deceased spouse that she must reside in a particular place or live in a specified manner under penalty of a potential loss of a portion of the natural returns from her fair one-third of the total joint capital.

The petitioner at bar may prefer to live in a hotel or reside abroad rather than be hampered by the business of a city mansion and a country estate. The reasonable requirements for the maintenance of such establishments, whereas perhaps reasonable for one having three-thirds of the joint family capital at his command, may be beyond the possibilities of one having only one-third thereof. In either event, it would be unreasonable, unfair and contrary to the purpose of the statute to compel one entitled by right to the

life use of one-third of the total capital, to continue to the end of her days in respect to her habits and mode of life under the virtual dominance of the dead.

The court does not intend to convey the impression that the decedent's obligation to the surviving spouse may not on occasion be partly solved by the grant of a life estate in specified property. The contrary is expressly contemplated in paragraph (g) of subdivision 1 of section 18. It does feel, however, that in so far as an attempt at solution is made in this manner, a burden rests upon those seeking to defeat the elective right to demonstrate that the particular property thus given represents only that reasonable cross-section of the decedent's possessions which, and which alone, the survivor is entitled to receive and bound to accept in lieu of her intestate rights.

The final matter for consideration concerns the attack of the widow on the trust, on the alleged ground that it is primarily for the benefit of the real estate of which she has only a life use.

The statements in the briefs of her opponents in purported reply to this contention, to the effect that she may denounce the life interests in the properties, wholly beg the question. Of course she may renounce them. She might renounce any gifts whatsoever under the will, as she has attempted conditionally to do by claiming to take her statutory rights in spite of the terms of the document. This, however, is not the present issue. As to one-third of his property, the law has in effect said to this testator: " You may not direct its disposition by testamentary instrument unless you give to your wife for life a substantial equivalent of that which she would receive if you died intestate." The only question for determination is as to whether the testator has complied with the legal condition imposed upon his action in this regard.

As has been held in all adjudications construing the rights of the surviving spouse under this statute, these are to be liberally construed in the interest of such survivor (See e. g., Matter of Greenberg, 141 Misc. 874, 885, 886; affd., 236 App. Div. 733; affd., 261 N. Y. 474; Matter of Harris, 150 Misc. 758, 760, 761; Matter of Sitkin, 151 id. 448, 456; Matter of Brown, 153 id. 282, 287; Matter of Simeone, 141 id. 737, 746), and " should not be whittled down by the ingenuity of the draftsman of a will or by the design of the husband to deprive the wife of her lawful rights." (FOLEY, S., in Matter of Byrnes, 141 Misc. 346, 350; affd., 235 App. Div. 782; affd., 260 N. Y. 465.)

The intent in the " whittling down " is wholly immaterial. The only pertinent inquiry is as to whether in fact such a result has been accomplished. The minimum gift which will validate the

will is a use for life of that which in intestacy she would receive outright, which, in this case, is one-third of a cross-section of the estate. The testator may not lawfully impair this irreducible minimum. He may not say to the widow that she must accept certain specified parts of his estate where there is any possibility that the part so assigned to her will not yield her for life the income which she would have received had the principal of her share come into her hands outright, and not been invaded.

Subdivision 1, paragraph (d), defeats the right to take as in intestacy only where the will contains " an absolute legacy or devise * * * and also a provision for a trust *for his or her benefit* for life of a principal equal to * * * the excess between said legacy or devise and his or her intestate share." (Italics not in the original.)

In the case at bar the trust provides that the income shall primarily be used to pay taxes and other charges including *assessments* (which are not the sole obligations of a life tenant, *Peck* v. *Sherwood,* 56 N. Y. 615, 617; *Thomas* v. *Evans,* 105 id. 601, 611, 612; *Matter of Young,* 17 Misc. 680, 690; modf. on other grounds, 15 App. Div. 285; affd., 160 N. Y. 705; *Jacobs* v. *Steinbrink,* 164 App. Div. 715, 717; *Smith* v. *Keteltas,* 32 Misc. 111, 114; affd., 62 App. Div. 174; *Matter of Shepard,* 136 Misc. 218, 220) on certain property in which the widow, if she were to follow the suggestion of the remainderman, would have no interest. How great an invasion of her rights this would effect is unpredictable and immaterial. All that is important is that the variety of trust here attempted to be erected, by reason of the fact that a portion of its income is not directed to be paid to the widow, does not comply with the statutory description of the sort of trust which the Legislature has provided shall alone defeat the primary right of the surviving spouse to elect to take her intestate share, and which statute as an integral part of the remedial enactments under consideration must receive a liberal interpretation in her interest.

For the reasons stated the court is of the opinion that the election of the widow to take her intestate share of the estate must be validated.

Enter decree on notice in conformity herewith.