Conway, Ch. J.
(dissenting). Irving Shupack (hereinafter called the “ testator ”) died on October 28, 1953, survived by his widow and two children—Harold and Janet. He left a will which, on November 24, 1953, was duly admitted to probate by the Surrogate’s Court of Queens County. One Edward Morrison (hereinafter called “Morrison”) was named executor and trustee. Under the terms of the will, testator bequeathed to the widow the sum of $2,500 outright. The balance of his property was directed to be given to Morrison (as trustee), and to be divided into three equal parts, each part to constitute the principal of a separate trust — Trust A for the widow, Trust B for Harold, a son, and Trust C for Janet, a daughter. Under Trusts B and C, the children Harold and Janet are each to receive the income therefrom until the respective beneficiary attains majority, at which time the respective trust is to end and the principal is to be turned over to such respective beneficiary. Under Trust A, the widow, “ for the remainder of her natural life ’ ’, is to receive the income therefrom, and, upon her death, such trust is to end and the principal is to be turned over and added to Trusts A and B, or to Harold and Janet (in the event their trusts have at that time terminated because of the attainment of their majorities). Other contingencies were provided for, but they are not material here.
The bulk of testator’s assets consisted of the wholly owned stock in six corporations, one of which had been formed by *490 Morrison, after the death of testator so as to take title to- certain real property for which a contract of purchase was pending at the time of testator’s death. (The- record does not disclose in whose name the purchase was made although the briefs of the widow and of the executor and trustee assert that the contract was made in the name of one of the wholly owned corporations of testator. We do not pass upon any question with reference to that purchase.) One corporation, is engaged in the business of manufacturing screw machine parts; another corporation carries on the business of jobbing wire formings; the remaining four corporations are engaged solely and exclusively in the real estate business,, each owning and renting factory or commercial buildings containing multiple tenants. It seems that the two industrial corporations “have always been- profitable”, and all the corporations have substantial surpluses.
It is provided in paragraph “ Fifth ” of testator’s will, that Morrison, as trustee, “ * * * may continue to hold in the form in which received any securities or other property which I may own at the time of my death.” As earlier stated, the bulk of testator’s assets upon death consisted of all the shares of stock in the corporations mentioned. We shall assume, therefore, in deciding the question here at issue,, that the principal of the trusts herein will consist of stock.
The question before us is whether the widow is entitled to elect to take her intestate share against the terms of the will under section 18 of the Decedent Estate Law.
The Surrogate below held that the widow was not entitled to so elect. Upon appeal to the Appellate Division, however, that court, in ruling that the testamentary provision for the widow’s benefit did not satisfy the requirements of section 18 and. that thus the widow could elect to take her intestate share, stated in part: “ In the light of the facts that the children’s interests are necessarily antagonistic to. appellant’s [.the widow], that at least upon the attainment by both children of their majorities they will have effective control of the affairs of the corporations by virtue of their outright ownership, of two thirds of the stock,, and that the" question of whether income would be available for. appellant, and, if so, the amount thereof,, will depend, upon whether the directors of, the corporations declare dividends, bearing in mind that the right to challenge, directors with respect to- the declaration of dividends is- circumscribed,- we do *491 not believe that the trust created for the benefit of appellant is one which may be said to be of such substantial benefit as to warrant a determination that she is not entitled to elect to take against the will. Despite the fact that the capital value of the principal of a trust appears to satisfy the conditions which under section 18 of the Decedent Estate Law would operate to bar a right of election if in fact because of other reasons the trust would not be of substantial benefit to the surviving spouse, the trust is illusory and the spouse would be deemed to have a right to elect to take against the will as in intestacy [citing cases].”
The pertinent portion of section 18 of the Decedent Estate Law provides: “(d) Where the will contains an absolute legacy * * * to the surviving spouse, of or in excess of the sum of twenty-five hundred dollars and also a provision for a trust for his or her benefit for life of a principal equal to or more than the excess between said legacy * * * and his or her intestate share, no right of election whatever shall exist in the surviving spouse.”
The testator bequeathed the sum of $2,500 outright to the widow, and the principal of the trust for the widow’s benefit for life consisted of one third of the remaining property. It would, therefore, appear that the testamentary provision does, in form, comply with the requirements of paragraph (d) of section 18. Section 18 (added in 1929) is a remedial statute, and should be construed in a liberal fashion in order to effectuate the benefits intended for the surviving spouse (Matter of Byrnes, 260 N. Y. 465, 472; Matter of Bommer, 159 Misc. 511, 520). Viewed in that light, the “ trust ”, as used in section 18, must be deemed to refer to one which is substantially beneficial to such spouse (Matter of Wittner, 301 N. Y. 461, 464), and, in order to effect the purpose of providing support of the surviving spouse for life, it must constitute the substantial equivalent of such spouse’s intestate share. Hence, a provision which equals the intestate share in form, but is illusory in fact, does not bar a right of election.
In Matter of Wittner (301 N. Y. 461, supra), the testatrix directed that her property be divided into three equal parts. She gave one part outright to her son; another part in trust for her daughter; and the third part in trust for life to her surviving husband. A clause in the will provided that the *492 corpus of any trust fund could be invaded in the discretion of the trustees in the event of any need on the part of any of the children of testatrix or of her husband occasioned by misfortune, sickness or any other reason whatever. The surviving husband challenged the legal efficacy of the trust' for his benefit under section 18. In ruling that he, as surviving spouse, was entitled to an absolute right of election, we pointed out (pp. 46L-465) that the clause referred to had the effect of giving him an absolute right of election for the trust referred to “in said section [18] must be deemed to refer to a substantially beneficial trust and not the kind of illusory disposition which exists here [citing a case] * * *. To hold otherwise would be to allow the destruction, in whole or in part, of the trust corpus which the statute clearly contemplates shall be the basis of appellant’s income during life; or, to put it otherwise, would permit appellant’s rights to £ be whittled down by the ingenuity of the draftsman of a will or by the design of the [testatrix] to deprive the [appellant] of [his] lawful rights ’ (Matter of Curley, 245 App. Div. 255, 257, affd. 269 N. Y. 548), contrary to the well-recognized doctrine that section 18 must be liberally construed in favor of the surviving spouse in order to fulfill £ the evident purpose of the Legislature that a surviving spouse should retain the right to claim his or her full intestate share, in spite of any will, unless the instrument should provide substantial equivalents ’ (Matter of Byrnes, 260 N. Y. 465, 470, 474, reargument denied 261 N. Y. 623).”
In Matter of Byrnes (260 N. Y. 465, supra) the testator left a trust for the benefit of his surviving wife for life or until her remarriage. In deciding that this was not the type of trust which barred a right of election within the meaning of section 18, we wrote (p. 472): “In adopting the new section 18, as received from the hands of the Commission, the Legislature announced its intention to be £ to increase the share of a surviving spouse in the estate of a deceased spouse, either in a case of intestacy or by an election against the terms of the will of the deceased spouse thus enlarging property rights of such surviving spouse, ’ and stated that ‘ such provisions shall be liberally construed to carry out such intention.’ ”
In Matter of Matthews (255 App. Div. 80, affd. 279 N. Y. 732), the testator set up a trust for his widow and mother. The trustee was given the power, inter alia, to determine which part *493 of the trust res should be income and which part principal, and when, in the opinion of the trustee an emergency existed, to pay part of such principal to his widow or mother. Because of the possibility of invasion of the principal on behalf of the mother, the trust for the benefit of the widow was deemed to be inadequate within the meaning of section 18, and the widow was given the right to elect.
In Matter of Curley (245 App. Div. 255, affd. 269 N. Y. 548), the testator set up a trust for the benefit of his widow for life and gave the trustee thereunder the power to serve without bond, and the power to designate, during his lifetime, a substitute, who likewise could serve without bond. In addition, the trustee was given the widest discretionary powers of sale and investment of the estate property, and was relieved of all liability for any act of omission or loss in the performance of his duties. Further, the judgment of the trustee as to the allocation and value of assets was to be conclusive. We held that that was not such a trust as was contemplated by section 18 since the whole purpose of that section was to protect the surviving spouse and to give him or her increased benefits; that to permit a testator to establish a trust, so-called, but one which is so bound with restrictions and conditions that it can, at the will of another than the beneficiary, be rendered unfruitful, would be to permit the ingenuity of the draftsman to whittle away that which was given, until the right of the widow would amount to little or nothing in fact; that if the trustee in his sole discretion, and as permitted by the very terms of the will, retained the stocks owned by the testator, which he had an absolute right to do, the income of the widow would be very small, if anything, and the protection given by section 18 and the purpose of the Legislature frustrated and rendered abortive. Indeed, the Appellate Division, in that case, had said (p. 257): ‘ ‘ While we must assume that the trustee will act legally, he may act in the interest of those who take the residuary estate, rather than for the benefit of the widow, and thereby frustrate the protection which the statute gives her.”
In Matter of Schrauth (249 App. Div. 846), the testator directed that the trustees retain in trust for the benefit of his widow for life all the shares of stock which he owned in a corporation of which he was president, unless his trustees decided to sell such stock, but this could only be done with the *494 written consent of testator’s five children. The balance of stock in the corporation was held by other members of the family. The court, after stating that it was thus within the power of the five children to determine whether the stock held by the testator should be sold, said (p. 847): “ It clearly appears that although the testator has given his all in trust, the widow will receive next to nothing by way of income under the terms of this will. She, therefore, has a right of election.”
Thus, a trust will be deemed illusory where, because of the peculiar nature of the property, or the imposition of some term of condition, the surviving spouse’s right to receive income might possibly be negated, impaired or rendered insecure. In short, a trust within the contemplation of section 18 must provide with reasonable certainty a real and substantial benefit to the surviving spouse. (See Matter of Schmidt, 171 Misc. 95, affd. 257 App. Div. 827, affd. 282 N. Y. 787; Matter of Eddy, 173 Misc. 723, 725, affd. 258 App. Div. 860, affd. 283 N. Y. 556; Matter of Withall, 274 App. Div. 846; Matter of Bommer, 159 Misc. 511, supra; Matter of Sheppard, 189 Misc. 367; Matter of Meyer, 197 Misc. 169.)
As earlier stated, the bulk of the corpus of the trusts for the widow and children here consists of wholly owned . stock in individually owned corporations. The corporate assets, as such, belong to the corporations; and Morrison, as trustee, will hold all of the stock. The widow and the children (during their minorities), therefore, are merely beneficiaries of trusts of corporate stock. Upon the children’s attainment of their respective majorities (Harold in 1957, and Janet in 1961) their respective trusts will end, at which time, each will receive one third of the stock. The widow will never receive the corpus or any part thereof. Before both children attain their majorities, control of the corporations will reside in Morrison, as trustee. Thereafter (in 1961), the children, as two thirds’ owners of the stock, will assume control over the corporations. As stockholders, the children will be in a position to sell their interests to third parties, in which event strangers will assume control of the corporations. In any event, it is clear that the widow, for her life, will merely be the income beneficiary of a trust of a one-third minority interest in corporate stock.
Where corporate stock constitutes the trust res, income to the corporation is not necessarily income to the trust bene *495 fieiary. The stockholder — and in turn the trust beneficiary — receives income only if and when — arid in the amount that — the directors of the corporations decide to declare dividends. The exercise of discretion and business’ judgment in' this respect resides solely with such directors*. (United States Trust Co. v. Heye, 224 N. Y. 242, 253; Robertson v. de Brulatour, 188 N. Y. 301; Matter of Schaefer, 178 App. Div. 117, 122, affd. 222 N. Y. 553; Stewart v. Phelps, 71 App. Div. 91, 98, affd. 173 N. Y. 621; Avedon v. Gem Dress House, 194 App. Div. 678, 681, affd. 232 N. Y. 505.) It is plain, therefore, that the widow will receive income under her trust only if and* when dividends are declared by the directors* of the corporations. As of 1961, the children, as the majority stockholders, will control the corporations. If they sell their stock to third parties, strangers will assume such control. Control permits of a choice of directors. The directors decide and determine corporate policy. ' That is, they alone decide whether corporate earnings should be distributed as dividends; or whether profits should be retained by the corporations for business- expansion, liquidation of indebtedness, or for some other purpose. It follows, therefore, that as of 1961, the children or strangers will, in practical effect, determine whether or not dividends shall be declared and, if so, when and in what amount. The widow as- beneficiary of a trust for life in stock may realize income therefrom only in the form of dividends. Thus will the children■ or st'rcmgers control the income of the widow under her trust. The children or strangers have a right to act for their own best interests. They are not required to serve as the widow’s “ keeper ”. It is conceivable, therefore, even assuming that the children-or strangers' (acting through the then directors) exercise honest arid sound business judgment, that no dividends will be declared for several years, or, if declared, may prove to be wholly inadequate; During that period of time, the widow will be without support. It is no answer that the widow (through the trustee) would be able to maintain an action against the directors to compel a dividend declaration. Exceptionally convincing must be the showing before a court will interfere in the internal management of a corporation by ordering the declaration of a dividend (Lockley v. Robie, 276 App. Div. 291, 296, mod. 301 N. Y. 371). The directors decide if and when* a dividend shall be declared and the amount thereof, and, unless fraud, bad faith, dishonesty or *496 a clear abuse of discretion can be established, the judgment of the directors in withholding dividends is recognized as conclusive. (Gordon v. Elliman, 306 N. Y. 456, 459; see, also, City Bank Farmers Trust Co. v. Hewitt Realty Co., 257 N. Y. 62, 67-68.) Thus, in view of the tremendous burden imposed upon a stockholder in that type of action, we may fairly conclude that the bequest of a “ law suit ” to a surviving spouse was never intended by the Legislature as the kind of beneficial provision which bars that spouse’s right of election under section 18 of the Decedent Estate Law.
In arriving at our conclusion in the present case, we are assuming that in the event the directors were to withhold dividends and thus deprive the widow of income under her trust, that such directors were acting honestly and in good faith. We are not even precluding the possibility that the directors might declare dividends regularly and in an adequate amount. It is possible, however, because of the peculiar nature of the trust res, and the potentially antagonistic interests of the children (or strange third parties, in the event the children sold their interests to them) and the widow — irrespective of whether or not the directors act properly — that the widow will receive no income or inadequate income under her trust. Viewed in the light of that possibility, it is plain that the prospects of the widow under her trust are insecure. It follows that the trust set up by the testator for the widow’s life does not constitute with reasonable certainty a real and substantial benefit to her within the contemplation of section 18 of the Decedent Estate Law. Although, in form, it satisfactorily complies with the requirements of the statute, it is illusory in fact. It is immaterial that the testator did not intend that the widow should be deprived of her rights as surviving spouse. “ The only pertinent inquiry is as to whether in fact such a result has been accomplished.” (Matter of Bommer, 159 Misc. 511, 520, supra.) We believe that the tone of section 18 was aptly pointed up by Surrogate Wingate in the Bommer case as follows (159 Misc. 511, 519, supra): “ The entire theory underlying the enactments contained in section 18 is that the widow is not to be viewed as an almoner beseeching the bestowal of the crumbs from her master’s table, but as a partner and aliquot co-owner of the family property which chances to rest in the legal ownership of the nominal head of the family partnership.”
*497 It is also urged that even were the widow to receive one third of the corporate stock outright, rather than as beneficiary of a trust comprising such stock, she would be in no better a position. With that contention we do not agree. As owner of the stock outright, the widow would at least be in a position to sell her interest if she so desired, i.e., if no or inadequate dividends were forthcoming. It may be that she would realize a paltry consideration were she to sell such a minority interest in closed corporations to a third party. That, however, would not be the only alternative open to her. She might very well be able to realize a substantial consideration were she to sell her interest to either or both of her children. Furthermore, assuming the children, at some subsequent time during the life of the widow, decided to abandon the corporate businesses, an attractive offer could be made to a third-party purchaser. That is, the children and the widow, by banding their interests together, could sell all the outstanding interests in such businesses. In this way, the children, as well as the widow, could obtain a substantial remuneration for their respective interests.
In view of the foregoing considerations, we believe that the widow’s trust does not measure up to the type of trust demanded by section 18 and that she, therefore, may exercise her right of election against the terms of the will as in intestacy. (See, also, Matter of Halperin, 201 Misc. 763.)
Morrison further contends that in any event the determination as to the widow’s petition for election against the will was prematurely made. He assigns as reasons that the estate is still in the process of administration; that estate tax returns have not been audited; that estate taxes have not been paid; and that Morrison might decide to sell the corporate securities and thus alter the nature of the trust res. This contention is untenable. Under subdivision 7 of section 18 of the Decedent Estate Law, an election by the surviving spouse must ‘ ‘ be made within six months from the date of the issuance of letters testamentary ’ ’. This the widow in the present case has done. The Surrogate decided adversely to her, and the Appellate Division, in effect, reversed such determination by permitting the widow to elect. It would serve no useful purpose at this time to defer a ruling on such issue as to whether the widow is entitled to her right of election.
*498 We shall pass on now to treat of the remaining issue in this case — the question whether Morrison (as executor-trustee) is entitled to exercise plenary managerial control over the real estate owned by those corporations engaged in the real estate business as if such realty were held outright by him. If the fiduciary is so entitled, he would be eligible for management commissions under subdivision 9 of section 285 and subdivision 7 of section 285-a of the Surrogate’s Court Act. In order to ansAver this in the affirmative, of necessity, the corporate entities of the real estate corporations Avould have to be ignored and disregarded. This the Surrogate did, and he predicated such authority upon certain powers which were given to the fiduciary under the Avill. In paragraph “Seventh”, it is provided: “ Should said Trusts at any time contain any real estate, the said Trustee shall have power to rent said real estate, including the power, where circumstances reasonably require it * * * to make leases * * * . Said Trustee may alter, reconstruct, or wreck and remove improvements of real estate, and may build new improvements. ’ ’
The Appellate Division in effect reversed the Surrogate below, and in part stated: “ A corporation may be managed only by its directors (Manson v. Curtis, 223 N. Y. 313; Boag v. Thompson, 208 App. Div. 132) and a testamentary fiduciary, though owning the controlling amount of stock of a corporation, may not take management of the corporation out of the hands of the directors (Matter of Kohler, 231 N. Y. 353, 367; see, also, Matter of Doelger, 254 App. Div. 178, affd. 279 N. Y. 646). Accordingly, despite powers given by the will to the trustee to deal with such real estate as might be present in the trust, the court was Avithout power to authorize the trustee to manage the real estate corporations and to do so ‘ as though the said real estate were held outright by the Trustee in unincorporated form ’.” A reading of the foregoing-cited decisions impels us to conclude that they are controlling here, and we therefore agree with the Appellate Division’s disposition of the matter. (See, also, Brock v. Poor, 216 N. Y. 387, 401; Boyle v. Boyle & Co., 136 App. Div. 367, affd. 200 N. Y. 597; Matter of Browning, 258 App. Div. 621.) Moreover, and in any event, it would seem that the testator did not intend nor contemplate that the realty owned by the corporations would constitute a portion of the trust res. The trust res was made up of the corporate stock of all the realty corporations, as *499 well as that of the two industrial corporations. Power over realty flowed to the fiduciary under the will only if “ said Trusts at any time contain any real estate ”. We must assume that the testator, by such language, intended to encompass his individually owned realty and not corporate realty. It would seem, therefore, that no good reason appears why the corporate entities of the real estate corporations should be disregarded. Hence, Morrison (as executor-trustee) is not entitled to exercise plenary managerial control over the real estate owned by the corporations as if such property were held outright by him. Such managerial control resides in the hands of the directors of those corporations.
The order of the Appellate Division appealed from should be affirmed, with costs to all parties, filing separate briefs, payable out of the estate.
Dye, Froessel, Van Voorhis and Burke, JJ., concur with Fuld, J.; Conway, Ch. J., dissents in an opinion in which Desmond, J., concurs.
In each proceeding: Order modified, with costs to all parties appearing separately and filing separate briefs, payable out of the estate, and case remitted to the Surrogate’s Court for proceedings not inconsistent with the opinion herein.